UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**GREGORY SOLOMON, JR.,**

    **Plaintiff,**

    **v.**                                                      **Case No. 11-CV-613**

**WISCONSIN CENTER DISTRICT, and
RUSSELL STAERKEL,**

    **Defendants.**

---

### DECISION AND ORDER ON
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

On June 24, 2011, the plaintiff, Gregory Solomon, Jr. ("Solomon"), filed a pro se complaint against his former employer, Wisconsin Center District ("WCD"), and the head of human resources of WCD, Russell P. Staerkel ("Staerkel") (collectively the "defendants"). (Docket # 1 at 3.) Construing Solomon's complaint broadly, Solomon alleges discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 and 42 U.S.C. § 1983.

On August 5, 2011, this Court dismissed Solomon's Title VII claim without prejudice on the grounds that Solomon failed to exhaust his administrative remedies. (Docket # 6.) However, Solomon was allowed to proceed on his claim under 42 U.S.C. § 1983. The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73 (E.D. Wis.). For the reasons stated below, the Court finds the defendants are entitled to summary judgment.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

## PRELIMINARY MATTERS

In cases in which at least one party is proceeding pro se. Civil L.R. 56 (E.D. Wis.) provides:

(a) If a party is proceeding pro se in civil litigation and the opposing party files a motion for summary judgment, counsel for the movant must comply with the following procedure:

> (1) The motion must include a short and plain statement that any factual assertion in the movant's affidavit, declaration, or other admissible documentary evidence will be accepted by the Court as being true unless the

> party unrepresented by counsel submits the party's own affidavit, declaration, or other admissible documentary evidence contradicting the factual assertion.
>
> (2) In addition to the statement required by Civil L.R. 56(a)(1)(A), the text to Fed.R.Civ.P. 56(c)(d) and (e), Civil L.R. 56 (a), Civil L.R. 56 (b), and Civil L.R. 7 must be part of the motion.

Here, the defendants provided both the statement contemplated by Civil L.R. 56(a)(1) and copies of the rules listed in Civil L.R. 56(a)(2). Solomon filed several documents in response to the defendants' motion for summary judgment: responses submitted to the defendants' discovery demand (Docket # 25); responses to the exhibits to the Affidavits of Russell Staerkel and Steven M. DeVougas filed in support of defendants' summary judgment motion (Docket # 25-1); an unsworn document entitled Affidavit of Gregory Solomon, Jr. (Docket # 25-2); a blue print (Docket # 25-3); a document apparently part of the transcript of Solomon's hearing before an Administrative Law Judge ("ALJ") for unemployment compensation benefits (Docket # 25-4); and a document entitled Answer to Defendant Summary Judgment to Dismiss (Docket # 25-5.) Solomon has also included a recording of his hearing before an ALJ for unemployment compensation benefits.

Pursuant to Civil L.R. 56(b)(2)(B)(i), Solomon was required to respond to the defendants' proposed statement of facts by reproducing each numbered paragraph in the defendants' proposed statement of facts, followed by a response to each paragraph. If Solomon disagreed with any of the proposed facts, he was to make specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon. While it appears Solomon attempted to comply with the local rules in his document entitled Answer to Defendant Summary Judgment to Dismiss, (Docket # 25-5), and in the Statement of Facts section of his response brief, (Docket # 24), Solomon's response to the defendants' proposed findings of fact falls short of the requirements set forth in Civil L.R. 56(b)(2)(B)(i) by failing to reproduce each numbered paragraph in the defendants' proposed

-3-

Case 2:11-cv-00613-NJ   Filed 05/15/12   Page 3 of 19   Document 34

statement of facts, followed by a response to each paragraph, and by failing to cite to the affidavits, declarations, parts of the record, and other supporting materials he relied upon. Most significantly, for the facts that Solomon does contest, he fails to cite to admissible evidence, such as a sworn affidavit, in support of his contentions. Accordingly, I find that Solomon has submitted no admissible evidence in this case.

Solomon does raise a challenge to the defendants' evidence which must be addressed. Solomon argues in his response brief that Staerkel is "using the power given to him by presenting false statement [sic], fabricated statements and unsigned verbal warnings. The evidence is all hear say [sic]." (Pl.'s Resp. Br. at 4, Docket # 24.) The defendants respond that the "statements made in the investigatory reports offered by defendants are not hearsay because they are not offered to show the truth of the matter asserted, but rather the information on which defendants acted." (Defs.' Br. at 6.)

It is true that the defendants include several documents regarding Solomon's disciplinary matters as attachments to Staerkel's affidavit that were not drafted by Staerkel. However, Solomon only appears to challenge the authenticity of exhibits A, E, G, and I of Staerkel's affidavit. (Docket # 25-1 at 1; Docket # 25-2 at 1-2.) Exhibit E was drafted by Staerkel and thus he can attest to its authenticity. Exhibits A, G, and I are admissible under the business records exception to the hearsay rule. *See United States v. Franco*, 874 F.2d 1136, 1139 (7th Cir. 1989) ("It is within the trial court's discretion to determine whether a proper foundation was laid for application of the business records exception to a particular document and whether the circumstances of the document's preparation indicate trustworthiness."); *Woods v. City of Chicago*, 234 F.3d 979 (7th Cir. 2000) ( "[T]o demonstrate such trustworthiness and reliability at the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce

-4-

the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records.").

Staerkel, as Human Resources Director for WCD, responsible for overseeing employee discipline and maintaining discipline records, (Staerkel Aff. ¶ 2, Docket # 22), is a "qualified witness" to authenticate the documents. *See Franco*, 874 F.2d at 1139 (stating a qualified witness is not required to have personally participated in or observed the creation of the document; rather, "qualified witness" is broadly interpreted to require "only someone who understands the system used" and be someone "with knowledge of the procedure governing the creation and maintenance of the type of records sought to be admitted.") (internal quotations and citations omitted). Staerkel lays a foundation for the documents by stating WCD's regular business practice of memorializing employee misconduct in writing. (Staerkel Aff. ¶ 3, Docket # 22.) *See* Fed. R. Evid. 803(6). Thus, these documents are admissible.

In the end, because Solomon fails to submit admissible evidence (i.e. sworn affidavits or declarations based on personal knowledge), the Court will accept the defendants' proposed findings of fact as uncontested. *See Greer v. Bd. Of Educ. Of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001) (noting that pro se plaintiffs must comply with a district court's local rules governing responses to proposed findings of fact and summary judgment motions to survive a motion for summary judgment). Nonetheless, the Court will consider Solomon's factual assertions based on his personal knowledge provided in the verified complaint. *See Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996) (noting that a verified complaint may serve as an affidavit to the extent that factual assertions therein comply with Rule 56(e)); *but see Albiero v. City of Kankakee*, 246 F.3d 927, 933-34 (7th Cir. 2001) (noting that conclusory statements are insufficient to survive summary judgment); *Drake v. Minnesota Mining &*

*Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (internal quotation and citation omitted) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

## UNDISPUTED FACTS

Gregory Solomon, Jr., an African American male, alleges the defendants discriminated against him and other African American union workers on the basis of race. (Defendant's Proposed Findings of Fact "DPFOF" ¶¶ 3-4.) Solomon was employed by the defendant, Wisconsin Center District, as a part-time setup and maintenance employee from July 25, 2005 to January 31, 2011. (*Id.* ¶ 5.) As a setup worker, Solomon set up meeting rooms for various events, set the U.S. Cellular Arena floor for sporting events, and managed temporary workers hired to remove snow from the premises. (*Id.* ¶ 7.) Russell P. Staerkel is employed by WCD as its Human Resources Manager. (*Id.* ¶ 9.) During his tenure at WCD, Solomon was disciplined on several occasions. (*Id.* ¶ 14.)

On January 25, 2006, Solomon received verbal counseling for failure to complete duties as specified on his work order. (*Id.*) In August 2006, Solomon applied for a full-time maintenance position; however, he was turned down for the position because WCD was seeking an applicant with 2 or more years of experience and, at that time, Solomon had only been employed with WCD for one year. (*Id.* ¶¶ 16-17.)

On January 19, 2007, Solomon was given a verbal warning for failure to appear for an assigned shift. (*Id.*) On June 10, 2008, Solomon received a verbal warning for "loafing" and being on an unauthorized break. (*Id.*)

In December 2008, Solomon applied for a full-time setup maintenance position. (*Id.* ¶ 18.) As part of the interview process, Solomon underwent a practical evaluation exercise, during which he was observed supervising a ballroom changeover. (*Id.* ¶ 19.) Solomon's performance was evaluated and it was noted that he tended to work alone, did not interact with the rest of the crew, did not lead or direct his crew, and failed to properly monitor the crew. (*Id.* ¶ 20.) Further, the changeover was not fully completed. (*Id.* ¶ 21.) Thus, WCD declined to offer Solomon full-time employment. (*Id.* ¶ 22.) After Solomon was denied full-time employment, he began to tell other employees that he believed he was passed over for promotion due to his race. (*Id.*) Solomon did not ask and was not told why he did not receive the promotion he applied for in 2008; however, WCD states that Solomon was passed up for promotion because there was a more qualified candidate. (*Id.* ¶¶ 23, 58.)

On March 9, 2009, Solomon was issued a verbal warning for violating several of the employee handbook rules, including insubordination, unsatisfactory work performance, and leaving his assigned work area without approval. (*Id.*) On July 8, 2009, Solomon was subject to an investigation for leaving an assigned work area and using a forklift without permission. (*Id.*)

In July 2009, Staerkel met with Solomon and explained that although Solomon was a valued employee, he could not continue to make disparaging and untruthful remarks to other employees. (*Id.* ¶ 26.) Staerkel directed Solomon to report any discrimination or other complaints to either himself or his manager immediately. (*Id.* ¶ 27.) Staerkel addressed concerns Solomon had over an incident relating to a co-worker that Solomon had previously reported to Staerkel. (*Id.* ¶ 30.) Solomon acknowledged that Staerkel had asked him to complete a written statement outlining his concerns and indicating the times, dates, and witnesses and Staerkel promised to fully investigate Solomon's

concerns once he received his statement. (*Id.* ¶ 31.) Solomon never provided Staerkel with statements. (*Id.* ¶ 32.)

On February 20-21, 2010, Solomon was scheduled to perform duties at the U.S. Cellular Arena. (*Id.* ¶ 33.) During his shift, Solomon was involved in a heated verbal exchange with a co-worker in which Solomon repeatedly used foul language. (*Id.* ¶¶ 34-37.) The incident was reported to Solomon's supervisor and to Staerkel. (*Id.* ¶ 38.) Staerkel interviewed witnesses following the incident and an investigatory interview was held with Solomon on February 25, 2010. (*Id.* ¶¶ 39-40.) As a result of the incident and subsequent investigation, Solomon received a three-day suspension. (*Id.* ¶ 42.) On February 25, 2010, Solomon was issued a "Last Chance Letter" which outlined his violations and stated that any future violations of WCD rules, policies and procedures, or verbal and written order would be cause for immediate termination. (*Id.* ¶¶ 43-44.) Solomon acknowledged receipt and understanding of the three-day suspension and last chance letter in writing. (*Id.* ¶ 45.)

On January 14-15, 2011, Solomon was reported by a co-worker for being disruptive, using foul and derogatory language, and making threats toward another employee. (*Id.* ¶ 46.) WCD underwent an initial investigation in which Solomon stated that the other employee was mad at him for not picking him for snow removal duty and then threatened him by asking him "to go outside." (*Id.* ¶ 47.) Witnesses described Solomon as loud and disruptive and as having used derogatory language towards a co-worker. (*Id.* ¶ 49.) On January 16, 2011, Solomon attended an investigatory interview concerning the incident. (*Id.* ¶ 50.)

WCD terminated Solomon's employment effective January 31, 2011 by letter dated January 31, 2011.

-8-

Case 2:11-cv-00613-NJ   Filed 05/15/12   Page 8 of 19   Document 34

**DISCUSSION**

As noted earlier, this Court dismissed Solomon's Title VII claim without prejudice for failure to exhaust his administrative remedies but allowed him to proceed on his claim under 42 U.S.C. §1983. As to the Title VII claim, the defendants rightly argue that Solomon has abandoned this claim. (Defs.' Br. at 8.)[1] As to the remaining § 1983 claim, the defendants argue they are entitled to summary judgment on the grounds that Solomon has provided no evidence that he suffered a constitutional deprivation caused by an official policy, custom, or usage of WCD.

*1.    Section 1983*

Solomon sues WCD and its head of human resources, Staerkel. WCD is a special purpose district created under Wis. Stat. ch. 229, subch. II, for the purpose of building and operating the Midwest Express Center (now Frontier Airlines Center) and for operating the U.S. Cellular Arena and the Milwaukee Theater. (DPFOF ¶ 8.) Pursuant to Wis. Stat. § 229.42, a sponsoring municipality: "[M]ay create a special purpose district that is a unit of government, that is a body corporate and politic, that is separate and distinct from, and independent of, the state and the sponsoring municipality. . . ." The Supreme Court has held that municipalities and other local government units can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement,

---

[1] It should be noted that at the time of filing his complaint, Solomon included his EEOC charge but did not include his right to sue letter. Thus, the Court dismissed Solomon's Title VII claim without prejudice on the grounds Solomon failed to exhaust his administrative remedies. The defendants, in their motion papers in support of their summary judgment motion, included Solomon's right to sue letter. (Docket # 23-3.) Although the date on the right to sue letter is very difficult to read, it appears to be dated March 30, 2011. The right to sue letter provides Solomon must file his Title VII lawsuit without 90 days of his receipt of the notice. It is unclear when Solomon actually received his right to sue letter; however, assuming Solomon received the letter shortly after March 30, 2011, at the time of filing his federal lawsuit, June 24, 2011, a Title VII claim was timely. It is unclear why Solomon failed to include his right to sue letter with his initial complaint or why he, or the defendants, for that matter, failed to alert the Court earlier of the existence of the right to sue letter. While the Court will not address Solomon's Title VII claim, the standard for imposing liability on a defendant in race discrimination claims under 42 U.S.C. § 1983 and Title VII are essentially the same. *Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003) ("Our cases make clear that the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection").

-9-

ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 690 (1978). As such, although WCD is separate and distinct from its sponsoring municipality, it appears the special purpose district is still a unit of government subject to potential liability for constitutional violations under § 1983.

Under *Monell*, a § 1983 plaintiff must show (1) that he has suffered a deprivation of a constitutionally protected interest, and (2) that the deprivation was caused by an official policy, custom or usage of the municipality. *Powe v. City of Chicago*, 664 F.2d 639, 643 (7th Cir. 1981).

### 1.1 Violation of a Constitutional Right

In a § 1983 claim, the plaintiff has the burden of proof as to the constitutional deprivation and "must present sufficient evidence to create genuine issues of material fact to avoid summary judgment." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011); *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). To prevail on a claim under § 1983, Solomon must show that: (1) he held a constitutionally protected right; (2) he was deprived of this right in violation of the Constitution; (3) the defendants intentionally caused this deprivation; and (4) the defendants acted under color of law. *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir. 1988).

Further, because Solomon alleges that the defendants discriminated against him on the basis of race in violation of the equal protection clause, he must also establish that he has been the victim of intentional discrimination using either the direct or indirect method of proof. *See Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1037-38 (7th Cir. 2003) (finding that for both § 1983 and Title VII claims, the plaintiff can provide evidence of intentional discrimination by offering either direct proof of discrimination or by relying on indirect evidence).

-10-

Direct evidence essentially "requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Cerutti v. BASF Corporation*, 349 F.3d 1055, 1061 (7th Cir. 2003) (internal quotations and citations omitted). A plaintiff that lacks evidence of such an admission can construct a "convincing mosaic of circumstantial evidence that points directly to a discriminatory reason for the employer's action." *Davis v. Con-Way Transportation Central Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004) (internal quotations and citations omitted). For example, evidence "that a defendant's explanation for an employment practice is 'unworthy of credence' is 'one form of circumstantial evidence that is probative of intentional discrimination.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (*citing Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000)). A plaintiff may rely on decisionmakers' remarks or behavior that either acknowledges discriminatory intent or more ambiguously supports an inference of discrimination. *Troupe v. May Department Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). In addition, a plaintiff may show that similarly situated employees were given more favorable treatment. *Id.* Finally, a plaintiff may show that he was qualified for the job but passed over for the job by someone outside his protected class and that the employer's stated reasons are unworthy of belief. *Id.* Once a plaintiff demonstrates that race was a motivating factor in an employment practice, the employer may limit its liability by demonstrating that it "would have taken the same action in the absence of the impermissible motivating factor." *Costa*, 539 U.S. at 94-95; *see also Bruno v. City of Crown Point, Ind.*, 950 F.2d 355, 361 (7th Cir. 1991).

Under the indirect method, a plaintiff must establish a prima facie case of discrimination. *Hildebrandt*, 347 F.3d at 1029-30. Once he has done so, the employer must then produce a nondiscriminatory reason for the employment action. *Id.* If the employer does so, the plaintiff must

-11-

then present sufficient evidence that would enable a trier of fact to find that the explanation is pretextual. *Id.*

To establish a prima facie case of discrimination under the equal protection clause, Solomon must show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993). Solomon must also show the defendants acted with discriminatory intent. *Id.*

Applying these standards, I find that Solomon has not met either burden. First, Solomon has not shown direct evidence of intentional discrimination. The defendants state that Solomon was passed up for promotions in August 2006 and December 2008 because there were more qualified candidates. (DPFOF ¶ 17, 19-21, 58.) Regarding Solomon's termination, the defendants state that Solomon was terminated based on repeated failure to comply with WCD policies and procedures. (*Id.* ¶ 54.) Further, although Solomon denied using profanity, he testified he was told by WCD that he was terminated for using profanity. (Solomon Deposition p. 47, Docket # 23-4.). Solomon has not submitted admissible evidence to counter the defendants' explanations.

Second, Solomon has not established indirect evidence of discrimination. Although Solomon is a member of a protected class and he alleges that he suffered an adverse employment action when he was denied two promotions and terminated based on his race, he does not offer any admissible evidence that similarly situated individuals, who were not African American, were treated more favorably. Solomon alleges that "[m]y suspension and termination was [sic] motivated by race. After seeing Black and White Union Workers breaking the same rules the punishment is more severe toward the Black Union Worker and if I was a White Union Worker I would never been suspended

-12-

or terminated." (Docket # 25-5 at 3.) Conclusory allegations of generalized racial bias do not establish discriminatory intent. *Minority Police Officers Ass'n of South Bend v. City of South Bend, Ind.*, 801 F.2d 964, 967 (7th Cir. 1986). It is the plaintiff's burden to show comparable circumstances in order to support an inference of discriminatory intent. *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 530 (7th Cir. 2003). Solomon has failed to do so.

In response to the defendants' statement of fact that Solomon was passed up for promotion because there was a more qualified candidate, Solomon states the following:

> The candidate that I was up against got caught stealing and he got [sic] stealing again when he became a fulltimer. I have my witness on audio recording stating this. The candidate is caucasion [sic] worker go to show that the Wisconsin Center District and Russell P Staerkel consistently hire and promote white caucasion [sic] people. His process was much easier than my process and this is another part-time set-up worker that I use to Supervise. How can a person Supervise workers and when it is time to fill a position I get pass up and still continue to Supervise.

(Docket # 25-5 at 6.)

Employees are similarly situated if they are directly comparable in all material respects. *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 551 (7th Cir. 2011) "'This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Id.* (quoting *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)).

Solomon does not provide any evidence that this white employee was similarly situated to Solomon or that he was treated more favorably. Although Solomon alleges that he was given a more difficult practical evaluation exercise than the white employee who ultimately received the promotion, he offers no more than this conclusory allegation. While he provides the blueprint of the

-13-

ballroom changeover he was required to complete for the practical evaluation exercise and states that the "other part-time set-up worker only had to set twenty rounds table and ten chairs each with linen," (Docket # 25-3), he presents no admissible evidence of the exercise the white employee was required to complete or how this employee was evaluated as compared to Solomon. Although the facts are taken in the light most favorable to Solomon, his own conclusory allegations, unsupported by specific facts, will not suffice to rebut evidence supporting a summary judgment motion. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003).

Also, Solomon argues the white candidate who ultimately received the promotion over him had been caught stealing and that he has "my witness on audio recording stating this." (Docket # 25-5 at 6.) Once again, Solomon offers no admissible evidence of this allegation. Solomon's "Answer to Defendant Summary Judgment to Dismiss," in which this statement appears, is not sworn, and is not based on personal knowledge as required by both the Fed. R. Civ. P. Rule 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). Likewise, although Solomon submitted an audio tape of a witness, he did not submit a sworn affidavit of his witness and evidence showing that his witness had personal knowledge of the matter. *See* Federal Rule of Evidence 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. ").

While personal knowledge may include reasonable inferences, those inferences must be "'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" *Payne*, 337

-14-

F.3d at 772 (quoting *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991)). As such, Solomon has failed to show a constitutional violation under § 1983.

### 1.2 Policy Statement, Ordinance, Regulation, or Decision of WCD's Officers

Further, even if Solomon could show he suffered a constitutional deprivation, to hold WCD liable under § 1983, Solomon must also demonstrate that the constitutional deprivation was caused by a policy statement, ordinance, regulation, or decision officially adopted and promulgated by WCD's officers. *See Monell*, 436 U.S. at 690. It is the plaintiff's burden to establish the local government unit's approval of the unconstitutional conduct. *McNabola*, 10 F.3d at 509-10. A plaintiff can "attempt to meet that burden by looking to 'the official pronouncements of [the] municipal or legislative bod[y], agency action in accordance with delegated authority, actions by individuals with final decisionmaking authority, inaction or custom.'" *Id.* at 510 (quoting *Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993)). Moreover, the plaintiff must show a "'direct causal link between the municipal policy and the constitutional deprivation.'" *Id.* (quoting *Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir. 1992)).

In the absence of a formal policy, a plaintiff must rely on the custom or practice prong of *Monell* to establish a basis for liability. *Id.* at 511. *Monell* authorizes the imposition of liability against a municipal entity "for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the government's official decisionmaking channels." 436 U.S. at 690-91. "[A] practice of unconstitutional conduct, although lacking formal approval, may provide a basis for municipal liability" if the plaintiff can establish that the policymaking authority acquiesced in a pattern of unconstitutional conduct. *Cornfield*, 991 F.2d at 1326.

-15-

A municipal "custom" may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice. *McNabola*, 10 F.3d at 511. The longstanding or widespread nature of a particular practice would support the inference that policymaking officials "must have known about it but failed to stop it." *Id*

In this case, the defendants have put forth evidence showing WCD's employee handbook states that WCD is an equal opportunity employer whose philosophy is the "organization's success depends on our ability to use the skills and talents of our employees regardless of their race . . . ." (DPFOF ¶ 10.) In response, besides making the conclusory allegations that WCD " does not follow this policy" and "consistently hire[s] and promote[s] full-time white caucasion [sic] people" and that "it's very rare that a Black African American will be hire [sic] and promoted to a full-time position," (Docket # 25-5 at 4), Solomon offers no evidence to create a genuine issue of material fact that WCD does not follow this policy. While Solomon states that WCD should "[p]rove that you hire and promote full-time Black African American people," (*id.*), it is Solomon's burden, as the plaintiff, to put forth evidence that shows either a formal policy of racial discrimination or a custom or practice of racial discrimination. *See McNabola*, 10 F.3d at 509-10. Solomon has not done this.

### 1.3 Claims Against Defendant Staerkel

Solomon has also named Staerkel as a defendant in his lawsuit. The defendants correctly point out that Solomon's complaint does not state whether he is suing Staerkel in his official or individual capacity. (Defs.' Br. at 15.) However, Solomon's omission of the phrase "individual capacity" does not necessarily render this solely an official capacity suit. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). Rather, the Seventh Circuit in *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000), states that for § 1983 claims that do not specify the capacity in which the defendant has been

sued: "Where the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity."

Despite this guidance from the court of appeals, it is not entirely clear from Solomon's complaint whether he is suing Staerkel in his official or individual capacity. The defendants argue that it is "not surprising" that Solomon's complaint does not state whether he is suing Staerkel in his official or individual capacity because termination of employment is an official act. (Defs.' Br. at 15.) However, the defendants also state Staerkel did not make the decision to terminate Solomon. (Staerkel Aff. ¶¶ 13-14.) This is consistent with Solomon's complaint, which alleges not that Staerkel made the decision to fire Solomon, but that Staerkel fabricated statements to hasten Solomon's termination.

Thus, while the complaint does refer to Staerkel using his official title, i.e., "Head of Human Resources Russell P. Staekel [sic]," which would indicate Solomon is suing Staerkel in his official capacity; the complaint also alleges Staerkel "made up a lot of statement [sic] to get me fired" and "wrote a lot of untrue statement [sic] to make me look bad," (Compl. at 2-4), which indicates an allegation of tortious conduct of an individual acting under color of state law. *See Wynn*, 251 F.3d at 592 (finding allegation a prison official deliberately falsified prison documents a claim against the official in his individual capacity). The complaint also asks for damages for Solomon's emotional distress, which further indicates an allegation of tortious conduct. (Compl. at 6.) Considering these factors in light of Solomon's pro se status, I conclude that Solomon may assert claims against Staerkel in his individual capacity.

-17-

Nonetheless, a valid § 1983 claim for damages against an official in his individual capacity requires a showing of direct responsibility for the improper action. *Moore v. State of Ind.*, 999 F.2d 1125, 1129 (7th Cir. 1993). In other words, "'an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.'" *Id.* (quoting *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). As stated above, Solomon has failed to show a constitutional violation under § 1983; as such, Staerkel bears no individual responsibility.

### 2. Solomon's Claims Under the Americans with Disabilities Act

In Solomon's response to the defendants' motion for summary judgment, he alleges WCD and Staerkel disciplined him for taking his diabetes medication in violation of the Americans with Disabilities Act. (Pl.'s Resp. at 4.) These allegations do not appear in Solomon's complaint. Solomon cannot amend his complaint through arguments in his brief in opposition to a motion for summary judgment. *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). Thus, Solomon's claims for violations under the Americans with Disabilities Act must fail.

In conclusion, for all of the foregoing reasons, the defendants' motion for summary judgment will be granted.

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket # 19) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 15th day of May, 2012.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge